**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EXXON MOBIL CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-236** |
| **CLARENCE HILL, ET AL.** | **SECTION "L" (3)** |

## ORDER AND REASONS

The Court has received Plaintiff Exxon Mobil Corporation's Motion to Enforce Attorney-Client Privilege (Rec. Doc. 3) and Defendants' Motion to Stay (Rec. Doc. 4). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

## I.     BACKGROUND

This case arises out of the inadvertent production of an allegedly privileged document in toxic tort litigation. Three of the Defendants in Intervention, Timothy Falcon, Jeremiah Sprague, and Frank Buck, are plaintiff's attorneys who have been pursuing naturally occurring radioactive material ("NORM") litigation against Exxon in state and federal court for several years. The fourth Defendant in Intervention, Clarence Hill, is the plaintiff in *Clarence Hill v. Exxon Mobil Corp., et al.*, No. 11-2786, the case in which this intervention originated.

The document at issue is the "Stein Memorandum," which was  written by Exxon's in-house counsel and addressed to an Exxon employee. Exxon inadvertently produced the Stein Memorandum to Falcon and Sprague in August 2009, during discovery in one of the state court NORM cases. Exxon learned of the production in early December 2009. On December 8, 2009, Exxon sent a letter to Falcon notifying him of the inadvertent production pursuant to Louisiana Code of Civil Procedure article 1424(D) and requesting that the original CDs and all copies be

returned. Exxon Mobil also sent revised CDs, which clawed back the Stein Memorandum, and submitted a privilege log identifying the document as subject to attorney-client privilege. On December 15, 2009, Falcon returned the original CDs. He allegedly did not mention that he and Sprague had retained copies of the Stein Memorandum. Falcon also allegedly did not assert at that time that the privilege had been waived.

Since then, Falcon and Sprague have apparently shared the Stein Memorandum with other attorneys, and various parties have attempted to introduce the Stein Memorandum against Exxon in NORM cases. For example, John Clegg attempted to introduce the Stein Memorandum in a case in the 24th JDC for the Parish of Jefferson, *Lester, et al. v. Exxon Mobil Corp., et al.*, No. 630-402 (the "Lester Jefferson case"), in support of a claim for punitive damages. Judge John L. Peytavin sustained an objection and ruled that the document was privileged and inadmissible. (Rec. Doc. 3-2 at 34-36). Buck attempted to introduce the Stein Memorandum in a case in Civil District Court for the Parish of Orleans, *Lester, et al. v. Exxon Mobil Corp., et al.*, No. 2002-19657 (the "Lester Orleans case"), again in support of a claim for punitive damages. Judge Ethel Simms Julien initially held that the Stein Memorandum was not covered by the attorney-client privilege, because its contents were analogous "to an attorney attempting to ask their client to testify falsely." (Rec. Doc. 14-2 at 3). Later, however, Judge Julien withdrew her ruling on the grounds that Buck had not provided sufficient notice of his intention to use the document. (Rec. Doc. 3-2 at 65-66).

In January 2012, Sprague notified Exxon that he intended to use the Stein Memorandum in an upcoming trial in the 24th JDC, *Oleszkowicz v. Exxon Mobil Corp., et al.*, No. 695645 (the "Olezkowicz case"). Exxon asked Sprague to return the document, but Sprague refused. On February 17, 2012, Exxon filed a Complaint in this Court, naming as defendants Falcon, Sprague, Buck, and their respective law firms. *See Exxon Mobil Corp. v. Timothy J. Falcon, et*

*al.*, No. 12-454. Exxon sought a declaratory judgment that the Stein Memorandum was protected by the attorney-client privilege and that the privilege had not been waived. (No. 12-454, Rec. Doc. 1). Moreover, Exxon sought an injunction requiring Defendants to return the Stein Memorandum and refrain from disseminating or attempting to use it. *Id.* On the same day, Exxon also filed a motion for a TRO (which the Court denied) and preliminary injunction. (No. 12-454, Rec. Docs. 2, 7).

On February 27, 2012, the Court issued an Order and Reasons denying the motion for a preliminary injunction and staying the case indefinitely. (No. 12-454, Rec. Doc. 17). The Court found several aspects of Exxon's motion to be problematic. First, the Court emphasized that the Louisiana state court system would be fully competent (and likely better equipped) to adjudicate the privilege issues, and that by filing the federal court case, Exxon was attempting to "short-circuit the normal functioning of the Louisiana state courts." *Id.* at 4. Furthermore, the Court cited "grave doubts about whether it ha[d] subject matter jurisdiction" over Exxon's claims. *Id.* at 5.[1] As a practical matter, the Court noted that if it accepted cases like this, its docket would dramatically expand. The Court also found Exxon's Complaint troubling on a conceptual level, primarily because "the relief sought could seriously impinge on the proper balance of comity and federalism between the concurrent state and federal judicial systems." *Id.* at 7. Following this Court's denial of Exxon's motion, Sprague did in fact attempt to introduce the Stein Memorandum into evidence in the Oleszkowicz case, and Judge Robert A. Pitre, Jr. held that the document was admissible, finding that it was "clearly an attempt to subvert evidence of the test

---

[1] The Court disagreed with the Defendants that abstention would be appropriate, since "[a]bstention implies that there is subject matter jurisdiction but for some other policy reason, a court refrains from exercising that power to hear the merits of a case." *Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F.3d 697, 701 (5th Cir. 2006). The Court noted the same concern with respect to the Anti-Injunction Act. *See Health Net, Inc. v. Wooley*, 534 F.3d 487, 493 (5th Cir. 2008).

results." (Rec. Doc. 16-2 at 2).

The instant case arises out of yet another individual NORM suit that was originally filed in Jefferson Parish, but subsequently removed and assigned to Section R of this Court. *See Hill v. Exxon Mobil Corp., et al.*, No. 11-2786. Clarence Hill, the plaintiff in that case, alleged that he had been exposed to radiation while working in a pipe cleaning facility, and that the defendants (including Exxon) had knowingly concealed from him the risks of that exposure. On October 1, 2012, the Court granted a joint motion to dismiss Hill's claims against Exxon and another defendant with prejudice. (No. 11-2786, Rec. Doc. 140). The case remained open against other defendants, however.

On December 19, 2012, Hill filed a motion to exclude one of the other defendant's expert witnesses under *Daubert* and Federal Rule of Evidence 702. (No. 11-2786, Rec. Doc. 258). Hill attached the Stein Memorandum as an exhibit to that motion. (No. 11-2786, Rec. Doc. 258-11). On January 1, 2013, Exxon moved to intervene in the *Hill* case for the limited purpose of asserting the attorney-client privilege with respect to the Stein Memorandum. (No. 11-2786, Rec. Doc. 268). The motion was referred to Magistrate Judge Wilkinson. On February 6, 2013, after conferring with both Chief Judge Vance and this section of the Court, Magistrate Judge Wilkinson granted Exxon's motion to intervene. (No. 11-2786, Rec. Doc. 285). Judge Wilkinson stated: "Since the [Stein Memorandum] has now actually been filed in this court's public record, the potential prejudice to Exxon is substantial if it is precluded from attempting to remove it." *Id.* at 2. Judge Wilkinson further stated that severance and transfer to this section of the Court would be appropriate, given "[t]he unusual circumstance of the pendency of a separate suit – currently stayed – filed by Exxon in this court concerning the same claim and already addressed in substantial part by another judge of this court." *Id.* On February 7, 2013, the intervention was severed and transferred to this section of the Court. (No. 13-236, Rec. Doc. 1).

4

II.     **PRESENT MOTIONS**

Two motions are presently before the Court. Defendants in Intervention have filed a Motion to Stay. (Rec. Doc. 4). They argue that a stay is appropriate in this case because Exxon was dismissed from *Hill* with prejudice, and the remaining claims in the case have also now been dismissed with prejudice. Moreover, Defendants argue that the relief Exxon seeks is identical to the relief it sought in the 12-454 case, in that Exxon is asking this Court to consider what evidence may or may not be considered by other trial courts in other matters. Exxon opposes the motion (Rec. Doc. 13) and argues that it has already been granted leave to proceed with its complaint in intervention, and that the relief sought here is different because only this Court is involved.

Exxon has filed a Motion to Enforce Attorney-Client Privilege. (Rec. Doc. 3). Exxon argues that abstention no longer applies, as Exxon is now seeking to have a document stricken from a proceeding in this Court, rather than state court. Exxon then asserts that the Stein Memorandum is privileged under Louisiana law, because it consists of legal advice that Exxon's in-house counsel gave to a company employee. Exxon also argues that other courts have excluded the Stein Memorandum from evidence, that it has never waived the privilege, and that the crime-fraud exception does not apply. In opposition to Exxon's motion (Rec. Doc. 14), Defendants raise multiple procedural objections to Exxon's motion, arguing primarily that the lack of service on Falcon, Sprague, and Buck means that Exxon's motion is premature. Defendants also argue that the attorney-client privilege does not apply to the Stein Memorandum, either because it contains business advice rather than legal advice, or because the crime-fraud exception to the privilege applies.

### III.      LAW AND ANALYSIS

### A.      Defendants' Motion to Stay

Defendants in Intervention argue that a stay of Exxon's motion is appropriate for two main reasons. First, Defendants argue that Hill's claims against Exxon and the other *Hill* Defendants have now been dismissed with prejudice, meaning that there are no compelling or exigent circumstances requiring the Court to rule on Exxon's motion.[2] Second, Defendants argue that the relief Exxon seeks is identical to the relief it sought in the 12-454 case. Defendants suggest that the Court cannot rule here without imposing jurisdiction in all the pending matters in this court and other courts, including various state courts.

Exxon responds by emphasizing that it has already been granted leave to intervene, and therefore, it is a proper party to the case. Furthermore, Exxon points out that Judge Wilkinson's order allowing the intervention recognizes that Exxon has a strong interest in moving forward as soon as possible, since the Stein Memorandum is now part of the public record. Exxon also emphasizes that this Court has already conferred with Judge Wilkinson and Chief Judge Vance, and determined that the intervention should be severed and transferred to this Court, so it is not logical to suggest that the intervention should not move forward just because the *Hill* case is closed.

Hill and his counsel have not cited sufficient justification for this Court to stay the case. Although the *Hill* case is closed, Exxon has already received leave to intervene based on the filing of the Stein Memorandum into the record of that case. Moreover, Defendants in Intervention are not correct that this Court's ruling will impose jurisdiction on any other pending

---

[2] When Defendants filed their motion to stay, two motions were still pending in the *Hill* case. (No. 11-2786, Rec. Docs. 271, 282). Since then, the Court has denied both motions. (No. 11-2786, Rec. Docs. 294, 295). Hill has subsequently filed a Notice of Appeal. (No. 11-2786, Rec. Doc. 296).

matters in state and federal court. Unlike the 12-454 case, which explicitly asked this Court to extend the effect of its own evidentiary ruling to other courts, the present Complaint in Intervention extends to the *Hill* case only. The Court will accordingly deny the motion to stay, but with the strong caveat that its ruling should have no effect on other pending NORM cases, and that other Judges should continue to rule on the privilege issue on a case-by-case basis.

**B.      Exxon's Motion to Enforce Privilege**

   **1.      Procedural Arguments**

In addition to their request that the Court stay the entire case, Defendants raise two procedural objections to Exxon's motion. First, Defendants argue that they have not been properly served in this case, and therefore, Exxon's motion is premature. Defendants concede that Hill has been properly served, since he was a party to *Hill*, but Falcon, Sprague, and Buck argue that the record contains no evidence of proper service on them. Because of this purported lack of service, they argue that they have not had the opportunity to file responsive pleadings and thus have not been able to plead any defenses, such as lack of personal jurisdiction. Defendants also argue more generally that Exxon is trying to skip to the end of the case by invoking its prayer for relief in the form of a motion.

Exxon responds that service is proper under the Federal Rules of Civil Procedure and this Court's local rules. Federal Rule of Civil Procedure 24(c) states: "A motion to intervene must be served on the parties as provided in Rule 5." Rule 5(d)(3) states that a court may allow electronic filing in its local rules, and Local Rule 5.1 requires that documents be filed in accordance with the Court's electronic filing procedures. Those procedures state that an attorney's registration as a Filing User constitutes consent to electronic service of all documents as permitted by local rules and the Federal Rules of Civil Procedure, and that the "Notice of Electronic Filing" generated by the ECF system constitutes electronic service. Therefore, the Court agrees that

Exxon has properly served its Complaint in Intervention on Hill and his counsel.[3]

Second, Defendants object to Exxon's failure to move to consolidate this case with the 12-454 case. They argue that when Exxon learned that the Stein Memorandum would be filed in *Hill*, it could have requested that this Court lift the stay on the 12-454 case, but instead, it attempted to have Chief Judge Vance rule on the same issue presented in the 12-454 case. But Exxon correctly points out that the two cases are substantially different, because the 12-454 case involved a request for injunctive relief in future state court proceedings, whereas *Hill* involved the filing of the Stein Memorandum in federal court. Furthermore, as Exxon argues, the standard for transfer (the "subject matter" involved "comprises all or a material part of the subject matter or operative facts of another action," LR 3.1) is lower than the standard for consolidation (the cases involve a "common question of law or fact," Fed. R. Civ. P. 42(a)). Accordingly, the Court will not deny Exxon's motion on the basis that Exxon has not moved to consolidate the two cases.

### 2. Substantive Arguments

The Louisiana Code of Civil Procedure provides that inadvertent disclosure of privileged material does not waive the privilege as long as certain conditions are met:

> A disclosure of a communication or information covered by the attorney-client privilege or work product protection does not operate as a waiver if the disclosure is inadvertent and is made in connection with litigation or administrative proceedings, and if the person entitled to assert the privilege or work product protection took reasonably prompt measures, once the holder knew of the disclosure, to notify the receiving party of the inadvertence of the disclosure and the privilege asserted. Once notice is received, the receiving party shall either return or promptly safeguard the

---

[3] Moreover, the Court is puzzled by Defendants' suggestion that this Court might lack personal jurisdiction over the attorneys of record in another case before the Court, in an intervention arising out of their conduct in that case. The Court finds it difficult to imagine that it might lack personal jurisdiction in these circumstances.

> inadvertently disclosed material, but with the option of asserting a
> waiver.  Even without notice of the inadvertent disclosure from the
> sending party, if it is clear that the material received is privileged
> and inadvertently produced, the receiving party shall either return
> or promptly safeguard the material, and shall notify the sending
> party of the material received, but with the option of asserting a
> waiver.

La. Code Civ. P. art 1424(D). In this case, it appears to be undisputed that Exxon disclosed the

Stein Memorandum inadvertently. Nor do Defendants raise arguments relating to Exxon's

conduct after learning of the disclosure.[4] The main dispute in this case is whether the Stein

Memorandum is privileged at all.

Louisiana Code of Evidence article 506(B)(1) states that the attorney-client privilege

extends to a confidential communication "[b]etween the client or a representative of the client

and the client's lawyer or representative of lawyer" that is "made for the purpose of facilitating

the rendition of professional legal services to the client."[5] In order for a communication between

a client and attorney to qualify as privileged, "[t]he client's intention in communicating with

legal counsel must be to obtain *legal advice or assistance*." Paul R. Rice, *Attorney-Client*

*Privilege in the United States* § 7:1 (2d ed.). "The nature of the client's intent poses a factual

question that can often be decided from the circumstances . . . and content of the communication

in question." *Id.*

Communications with in-house corporate counsel are sometimes, but not always,

privileged. *See* La. Code Evid. art 506, cmt. d (noting that in-house counsel are not explicitly

excluded from article 506). "Generally, there is no intracorporate privilege between two

---

[4] Exxon argues in its brief that it has not waived the privilege, and Defendants do not
respond to those arguments in their opposition brief.

[5] Exxon argues that Louisiana law should govern this issue because *Hill* is a diversity
case. Exxon is correct under Federal Rule of Evidence 501, which provides that "state law
governs privilege regarding a claim or defense for which state law supplies the rule of decision."

corporate employees. However, communications to 'in house' counsel about legal services may fall within the privilege, either as a communication by client to attorney or as a communication between representatives of the client." La. Civ. L. Treatise, Evidence and Proof § 8.6 (2012 ed.). In other words, "the privilege is triggered only by a client's request for legal, as contrasted with business, advice." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984). Although there may be an "unstated operating presumption" that communications with outside counsel constitute legal advice, this presumption does not apply to communications with in-house counsel "because of the many nonlegal responsibilities in-house counsel assumes." Rice, *Attorney-Client Privilege* at § 7:1. Thus, communications to and from in-house counsel are privileged "only upon a clear showing that [in-house counsel] gave [advice] in a professional legal capacity." *Id.* (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)). With respect to communications that relate to both business and legal advice, the general rule is that "the protection of the privilege applies only if the *primary* or *predominate purpose* of the attorney-client consultation is to seek legal advice or assistance." *Id.* at § 7:5.

Exxon argues that the Stein Memorandum constitutes communication between an employee and corporate counsel for the purpose of providing legal advice, and therefore, the document is privileged. Specifically, Exxon notes that the Stein Memorandum was written by an in-house Exxon attorney, who is identified as "counsel," and addressed to an Exxon employee and copied only to other Exxon employees. Exxon argues that the document contains legal advice regarding the use and disposition of tables reflecting results of air-sample tests performed by an Exxon industrial hygienist; Exxon explains that when the Stein Memorandum was written, Exxon was considering a contract with Intracoastal Pipe Repair and Supply Company ("ITCO"), and Exxon's industrial hygienist performed the tests at the request of counsel for the purpose of due diligence. Exxon also submits affidavit testimony from both Ms. Stein and Mr. Guidry (the

Exxon employee to whom the document was addressed) supporting these contentions. (Rec. Doc. 3-2 at 1-5). Both state that Guidry met with Stein for the purpose of obtaining her legal advice on Guidry's response to ITCO, and that they considered the document to be a confidential attorney-client communication. *Id.*

Defendants respond by arguing that the Stein Memorandum is not privileged because it conveys facts acquired from persons or sources other than the client, and because it provides business advice rather than legal advice. Defendants emphasize that the Stein Memorandum contains factual information—specifically, dust and radiation measurements taken by Exxon's industrial hygienist—and that this factual information is memorialized in the document. Defendants argue that the concealed information is not proprietary business information. Furthermore, Defendants argue that Exxon has not sufficiently explained how the contents of the Stein Memorandum constituted legal advice, rather than business advice, and therefore, Exxon has not met its burden of establishing that the attorney-client privilege applies.

The Court agrees with Defendants in Intervention that Exxon has not met its burden of demonstrating that Guidry consulted Stein for legal advice, rather than business advice. The Court considers three main pieces of evidence in reaching this conclusion: the Stein Memorandum itself, and Guidry's and Stein's affidavits that Exxon has submitted in support of its motion. None of these three documents provide an adequate basis for the Court to conclude that Stein was providing Guidry with legal advice.

Guidry's and Stein's affidavits both state that Stein advised Guidry not to include the additional tables because they contained "Exxon's internal corporate property," or test results "taken and prepared for Exxon's internal use," which Exxon was not obligated to share. (Rec. Doc. 3-2 at 2, 5). However, these assertions are not enough to demonstrate that the "primary or predominant" purpose of Guidry's consultation with Stein was for Stein to provide legal advice,

particularly in light of the fact that the Stein Memorandum itself does not contain any reference to a legal justification for Stein's advice, or legal concerns prompting Guidry to seek such advice. When Guidry's consultation with Stein occurred, Exxon was in the process of negotiating a contract with ITCO. Thus, it appears from the face of the document that the primary purpose of Stein's advice to Guidry was to help secure more favorable contract terms, and Exxon's submitted affidavits are not sufficiently persuasive to compel a different conclusion.

The Court might have reached a different result if Guidry or Stein had been able to identify a more specific legal concern that prompted Stein's advice. But that is not the case here. The Court believes that the primary motivation for Stein's advice was to contribute toward Exxon's business interests, rather than protect it from potential litigation by ITCO or provide other legal advice. Accordingly, the Court concludes that the Stein Memorandum is not privileged and will deny Exxon's motion.[6]

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that Exxon's motion to enforce (Rec. Doc. 3) is DENIED. IT IS FURTHER ORDERED that Defendants' motion to stay (Rec. Doc. 4) is DENIED.

New Orleans, Louisiana, this 28th day of June, 2013.

UNITED STATES DISTRICT JUDGE

---

[6] Because the Court concludes that the Stein Memorandum did not contain legal advice, it does not reach the issue of whether the crime-fraud exception applies in this case.